# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| PRESTON TOWNSON,                      ) | |
|     Plaintiff,                       ) | |
|                                       ) | |
| v.                                    ) | CIVIL ACTION NO. 1:22-00251-KD-N |
|                                       ) | |
| MERRICK GARLAND *et al.*,             ) | |
|     Defendants.                      ) | |

## REPORT AND RECOMMENDATION

This action is before the Court on a motion to dismiss count three of Plaintiff's complaint filed by Defendants Merrick Garland, Attorney General of the United States, the United States Department of Justice, and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). (Doc. 14).[1] For the reasons stated herein, the undersigned **RECOMMENDS** Defendants' motion be **GRANTED**, and that count three of Plaintiff's complaint be **DISMISSED with prejudice**.

### I.   *Legal Standard*

Under Federal Rule of Civil Procedure 12(b)(6) a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("To survive a motion to dismiss, a complaint

---

[1] The assigned District Judge referred the present motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)–(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (8/30/2022 electronic reference).

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (citation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . [This standard] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557 (second brackets in original). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1379 (citing *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003)).

## II.     Background[2]

On March 10, 2021, Plaintiff Preston Townson ("Townson") filled out an application for a federal firearms license ("FFL") with the ATF. (Doc. 1, PageID.3; Doc 1-1, PageID.45). This application was received by the ATF on April 26, 2021, though was not deemed "perfected" until June 16, 2021. (Doc. 1, PageID.3, 10). On September 16, 2021, the ATF issued a notice to Plaintiff that his application had been

---

[2] The facts presented here are limited to those relevant for disposition of the underlying motion to dismiss count three (Doc. 14) and presented in the light most favorable to Plaintiff. *See Speaker*, 623 F.3d at 1379.

2

denied. (Doc. 1, PageID.18; Doc. 1-7, PageID.492-504).[3] Upon receipt, Townson timely filed a request, through counsel, for a hearing pursuant to 18 U.S.C. § 923(f). (Doc. 1, PageID.20; Doc. 1-8, PageID.505-08). A hearing was set for March 8-9, 2022, for Plaintiff to make his case to the ATF. (*See* Doc. 1-10, PageID.533).

Prior to this scheduled hearing, Plaintiff's counsel sent a letter dated February 16, 2022, to Steven Kolb, Director of Industry Operations for the ATF's Nashville Field Division. (Doc. 1-10). The letter requested, among other things, "that this hearing take place pursuant to the provisions of the Federal Administrative Procedures Act." (Doc. 1-10, PageID.533). Kolb responded in a letter dated February 22, 2022. (Doc. 1-11). Referencing Plaintiff's request for the hearing to take place pursuant to the Administrative Procedure Act ("APA"), Kolb stated:

1. <u>Request for Administrative Procedures Act ("APA") Compliance</u>. ATF hearings are held under the authority of the Gun Control Act of 1968 ("GCA"), as amended, 18 U.S.C. Chapter 44, and its implementing regulations, 27 CFR Part 478. The APA does not apply as the hearings are "matter[s] subject to a subsequent trial of the law and facts de novo in a court." 5 U.S.C. § 554(a),

(Doc. 1-11, PageID.536). Plaintiff's FFL hearing took place on March 8-9, 2022, and the denial of his application was subsequently affirmed by the ATF in a final notice dated May 4, 2022. (*See* Doc. 1-12).

Shortly after receiving the final notice of denial, Plaintiff filed the present complaint in this Court on June 27, 2022. (Doc. 1). Defendants filed the operative motion to dismiss count three on August 29, 2022, (Doc. 14), and the Court entered

---

[3] The undersigned expresses no opinion on the merits of the ATF's decision to deny Plaintiff's FFL application, as it is not directly applicable to disposition of the underlying motion to dismiss count three. However, Townson's application was denied because the ATF determined Plaintiff had willfully failed to disclose material information in connection with his application. (*See* Docs. 1-7, 1-12).

3

an order setting briefing deadlines for the motion on August 31, 2022. (Doc. 16). Plaintiff timely responded (Doc. 17), and the Government has replied (Doc. 18). The matter is now ripe for disposition.

### III. *Analysis*

Count three of Plaintiff's complaint alleges the "ATF failed to conduct the administrative review of the proposed license denial in accordance with the Administrative Procedures Act." (Doc. 1, PageID.37-38). Defendants argue count three should be dismissed under Rule 12(b)(6) for failure to state a claim "because FFL denial and revocation decisions made under the GCA are not subject to the Administrative Procedure Act." (Doc. 14, PageID.609).

Before addressing the merits of Defendants' motion to dismiss, the Court will briefly review the applicable provisions of the Gun Control Act ("GCA"), 18 U.S.C. §§ 921 *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*

**A. The Gun Control Act of 1968**

Pursuant to the GCA, all persons "engage[d] in the business of importing, manufacturing, or dealing in firearms," must be properly licensed by the Attorney General of the United States. 18 U.S.C. § 923(a). Applicants for a federal firearms license ("FFL") shall be approved if the requirements of § 923(g)(1) are met. Once an application for a license is submitted, the Attorney General has 60 days to approve or deny an application. 18 U.S.C. § 923(d)(2). If an application is denied, the applicant "shall receive a written notice from the Attorney General stating specifically the grounds upon which the application was denied," 18 U.S.C. § 923(f)(1), and the

4

applicant may request a hearing to review the denial. 18 U.S.C. § 923(f)(2). *See* 27 C.F.R. § 478.71.[4] This hearing process is described at 27 C.F.R. § 478.72 and provides:

> If the applicant for an original or renewal license desires a hearing to review the denial of his application, he shall file a request therefor, in duplicate, with the Director of Industry Operations within 15 days after receipt of the notice of denial. The request should include a statement of the reasons therefor. On receipt of the request, the Director of Industry Operations shall, as expeditiously as possible, make the necessary arrangements for the hearing and advise the applicant of the date, time, location, and the name of the officer before whom the hearing will be held. Such notification shall be made not less than 10 days in advance of the date set for the hearing. During the hearing the applicant will have the opportunity to submit facts and arguments for review and consideration; offers of settlement will not be entertained at the hearing but may be made before or after the hearing. On conclusion of the hearing and consideration of all relevant facts and circumstances presented by the applicant or his representative, the Director shall render his decision confirming or reversing the denial of the application. If the decision is that the denial should stand, a certified copy of the Director's findings and conclusions shall be furnished to the applicant with a final notice of denial, Form 5300.13. A copy of the application, marked "Disapproved," will be returned to the applicant. If the decision is that the license applied for should be issued, the applicant shall be so notified, in writing, and the license shall be issued as provided by § 478.47.

Though a hearing may result in issuance of a "final notice of denial," it is not necessarily an applicant's final opportunity to make his or her case. Under the GCA:

> If after a hearing held under paragraph [§ 923(f)(2)] the Attorney General decides not to reverse his decision to deny an application …, the Attorney General shall give notice of his decision to the aggrieved party.

---

[4] 27 C.F.R. § 478.71 states:

> Whenever the Director has reason to believe that an applicant is not qualified to receive a license under the provisions of § 478.47, he may issue a notice of denial, on Form 4498, to the applicant. The notice shall set forth the matters of fact and law relied upon in determining that the application should be denied, and shall afford the applicant 15 days from the date of receipt of the notice in which to request a hearing to review the denial. If no request for a hearing is filed within such time, the application shall be disapproved and a copy, so marked, shall be returned to the applicant.

5

> The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2). If the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court

18 U.S.C. § 923(f)(3). Thus, an applicant whose application has been denied may file suit in the district court for a "de novo judicial review." *Id*.

In conducting such a review, "the ATF's decision is entitled to no presumption of correctness, and (*sic*.) the district court may attach such weight, if any, as it deems appropriate to the ATF's determinations and decision." *Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives*, 348 F. Supp. 2d 1299, 1306 (S.D. Ala. 2004), *aff'd Willingham Sports, Inc. v. BATFE*, 415 F.3d 1274 (11th Cir. 2005). The reviewing court is thus afforded substantial discretion and may consider additional evidence not presented during the underlying administrative hearings, hold evidentiary hearings when needed, or simply enter judgment based upon the administrative record. *Fairmont Cash Mgmt., L.L.C. v. James*, 858 F.3d 356, 361-62 (5th Cir. 2017) (citations omitted). *See Shawano Gun & Loan, LLC v. Hughes*, 650 F.3d 1070, 1076 (7th Cir. 2011) (explaining that "de novo judicial review" under § 923(f)(3) gives district court discretion to receive additional evidence not included in the administrative record (or not) and to "accord the Secretary's findings such weight as [the court] believes they deserve in light of the evidence…" (citation omitted)).

## B. The Administrative Procedure Act

The APA was enacted "to bring uniformity to a field full of variation and diversity" in the administrative agency landscape. *Dickinson v. Zurko*, 527 U.S. 150, 155 (1999). Viewing the APA from 10,000 feet, it "govern[s] the actions of agencies relating to investigations, adjudications, rule making, licensing, and open meeting and disclosure requirements." *Arwady Hand Truck Sales, Inc. v. Vander Werf*, 507 F. Supp. 2d 754, 758-59 (S.D. Tex. 2007) (citation omitted). However, while the APA created procedural and evidentiary requirements for federal agency hearings, "[t]he mere existence of the APA does not itself impose a duty upon federal administrative agencies to hold formal, adversarial hearings." *Id.* at 759 (citing *Conley Electronics Corp. v. Federal Communications Com.*, 394 F.2d 620, 625-26 (10th Cir. 1968)).

By its own terms, the APA applies "in every case of adjudication *required by statute to be determined on the record* after opportunity for an agency hearing …" with six exceptions. 5 U.S.C. § 554(a) (emphasis supplied). *See Crestview Parke Care Ctr. v. Thompson*, 373 F.3d 743, 748 (6th Cir. 2004) ("Agencies need only employ this set of formal adjudication procedures if there is an 'adjudication required by statute to be determined on the record after opportunity for an agency hearing.'" 5 U.S.C. § 554(a)). Several courts have distilled the requirements of § 554(a) into a three-pronged approach, finding the APA should generally apply when there is: 1) an adjudication, (2) determined on the record, and (3) after the opportunity for an agency

7

hearing. *See Aageson Grain & Cattle v. United States Department of Agriculture*, 500 F.3d 1038, 1045 (9th Cir. 2007) (citation omitted).[5]

**C. Count Three: "Failure to Conduct Hearing Pursuant to [APA]"**

Plaintiff's count three asserts the "ATF failed to conduct the administrative review of the proposed license denial in accordance with the [APA]," and asks the Court to "determin[e] that defendants violated Townson's rights under the Administrative Procedures Act and invalidate the administrative denial of his application." (Doc. 1, PageID.37-38, 39). Defendants move to dismiss count three under Rule 12(b)(6) for failure to state a claim upon which relief can be granted on the basis that "FFL denial and revocation decisions made under the GCA are not subject to the [APA]." (Doc. 14, PageID.609). Moreover, Defendants argue that FFL hearings, because they are subject to "de novo judicial review," 18 U.S.C. § 923(f)(3), are exempted from the formal requirements of the APA. *See* 5 U.S.C. § 554(a).[6]

In short, Plaintiff urges the Court that the APA does (or should) apply to hearings conducted pursuant to 18 U.S.C. § 923(f), whereas Defendants argue it clearly does not. Accordingly, the matter before the Court is a question of statutory interpretation, which is a question of law. *United States v. Hooshmand*, 931 F.2d 725, 737 (11th Cir. 1991) (citation omitted). *See Caver v. Cent. Ala. Elec. Coop.*, 2015 U.S.

---

[5] *See also Five Points Rd. J.V. v. Johanns*, 542 F.3d 1121, 1125 (7th Cir. 2008) (citations omitted) (viewing and analyzing APA applicability as a three-pronged test), *and Lane v. United States Dep't of Agriculture*, 120 F.3d 106, 108 (8th Cir. 1997) (same).

[6] Exempted from the APA's formal requirements are: "(1) a matter subject to a subsequent trial of the law and the facts de novo in a court." *See* 5 U.S.C. § 554(a)(1).

8

Dist. LEXIS 119017, *8 (S.D. Ala. 2015) ("As a pure question of law, [an] issue of statutory interpretation (*sic*.) is well suited for resolution via Rule 12(b)(6) motion.").

When interpreting a statute, courts are instructed to begin with the plain language of the statute itself. *Consol. Bank, N.A. v. United States Dep't of the Treasury, Office of the Comptroller of the Currency*, 118 F.3d 1461, 1463 (11th Cir. 1997) (citation omitted). And, "[a]s a basic rule of statutory interpretation, we read the statute using the normal meanings of its words." *See id.* ("Courts must assume that Congress intended the ordinary meaning of the words it used, and absent a clearly expressed legislative intent to the contrary, that language is usually dispositive." (citation omitted)). Thus, "unless the statute is ambiguous, our inquiry begins and ends with the statute's plain language." *Shockley v. Comm'r of IRS*, 686 F.3d 1228, 1235 (11th Cir. 2012) (citation omitted). The Court looks beyond plain statutory language "only when the language of the statute is unclear or ambiguous, when Congress has expressed an intent contrary to that suggested by the plain language, or when absurd results would ensue from adopting the plain language interpretation." *Consol. Bank, N.A.*, 118 F.3d at 1464 (citations omitted).

With these well-accepted rules of statutory interpretation in mind, the Court looks first to the text of the APA, which states its application "in every case of adjudication *required by statute to be determined on the record* after opportunity for an agency hearing …" with six exceptions.[7] 5 U.S.C. § 554(a) (emphasis supplied).

---

[7] Only the first of the six exceptions is relevant here: "(1) a matter subject to a subsequent trial of the law and the facts de novo in a court." *See* 5 U.S.C. § 554(a)(1).

9

The plain language of the APA is not disputed by the parties, and they further agree the relevant statute for its purposes is the GCA. Moreover, Plaintiff's complaint establishes – and Defendants do not dispute – that there has been both an adjudication (in the form of the ATF's final decision denying Townson's application) and an opportunity for an agency hearing (which was conducted March 8-9, 2022). Therefore, under the three-pronged approach described in *Aageson Grain*, 500 F.3d at 1045, the APA should apply to Plaintiff's denial/revocation hearing if the GCA requires that it be "determined on the record." *See* § 554(a).

Accordingly, the Court turns to the text of the GCA – particularly, 18 U.S.C. § 923(f)(2)-(3), which sets out the procedure for FFL hearings. *See Arwady*, 507 F. Supp. 2d at 760 ("Because the applicability of the APA depends on the type of hearing a statute requires and the GCA governs the hearing Arwady receives, the type of hearing provided by the GCA determines whether the APA applies to the ATF hearing.") (footnote omitted)). Pursuant to these sections:

> (2) If the Attorney General denies an application for, or revokes, a license, he shall, upon request by the aggrieved party, promptly hold a hearing to review his denial or revocation. In the case of a revocation of a license, the Attorney General shall upon the request of the holder of the license stay the effective date of the revocation. A hearing held under this paragraph shall be held at a location convenient to the aggrieved party.
>
> (3) If after a hearing held under paragraph (2) the Attorney General decides not to reverse his decision to deny an application or revoke a license, the Attorney General shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within sixty days after the date notice was given under this paragraph file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection,

the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing held under paragraph (2). If the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

18 U.S.C. § 923(f)(2)-(3).

The plain language of the GCA refers simply to a "hearing," rather than a "hearing on the record." *See id*. The corresponding federal regulations, 27 C.F.R. §§ 478.71-478.78, also speak only of a "hearing" rather than a "hearing on the record."

Courts have noted the "fundamental and well-recognized distinction [that] exists between a requirement that an agency provide a 'hearing' and a requirement that an agency provide a 'hearing on the record.'" *Railroad Com. of Texas v. United States*, 765 F.2d 221, 227 (D.C. Cir. 1985) (citations omitted) (compiling cases distinguishing the two terms). Indeed, the Supreme Court has explained that "[a] good deal of significance lies in the fact that some statutes do expressly require determinations on the record," while others do not. *United States v. Allegheny-Ludlum Steel Corp.*, 406 U.S. 742, 757 (1972) (citation omitted). Thus, in evaluating the plain language of 18 U.S.C. § 923(f)(2)-(3) and affording the term "hearing" its ordinary meaning, *see Consol. Bank, N.A.*, 118 F.3d at 1463, it would seem apparent that the GCA does not require a hearing "to be determined on the record," for purposes of the APA. *See* 5 U.S.C. § 554(a).

Defendants point to three cases which have held the same in this precise context. *See e.g.*, *Arwady*, 507 F. Supp. 2d at 759-60 ("Neither the GCA nor the C.F.R. calls for a 'hearing on the record.' The pertinent sections of both statutes simply state

11

that a person whose application for a federal firearms license is denied or whose license is revoke is entitled to a 'hearing' upon request. Therefore, the Court concludes Arwady's denial hearing was not a formal, adversarial hearing to which the APA standards would apply." (citations omitted)), *Shaffer v. Holder*, 2010 U.S. Dist. LEXIS 31415, *41-42 (M.D. Ten. 2010) ("The Court concludes there is no merit to Shaffer's argument that ATF should have applied the APA to the agency hearing. The APA's formal proceeding standards are only applicable when the governing statute specifies that an agency must conduct a 'hearing on the record,' as opposed to a statutory requirement of a 'hearing' or a 'full hearing.'" (citation omitted)), and *Nat'l Lending Group, L.L.C. v. Mukasey*, 2008 U.S. Dist. LEXIS 107566, *5 (D. Ariz. 2008) ("Neither the Gun Control Act of 1968, 18 U.S.C. §§ 921 et. seq., nor the regulations promulgated thereunder, require that the administrative hearing be a 'hearing on the record' under 5 U.S.C. § 554. Consequently the formal administrative hearing requirements of 5 U.S.C. § 556 do not apply to this case." (footnote omitted)).

Plaintiff does not dispute caselaw favors Defendants' position, nor does he point to any contrary legal authority – rather, he argues generally that "neither 18 U.S.C. § 923 nor any other provision of the [GCA] expressly excludes these licensure hearings from the APA," and the cases mentioned above "have not fully examined the issue … and consequently that they should not be followed." (Doc. 17, PageID.619).

Plaintiff offers several reasons why this Court should ignore seemingly good law, and specifically, he: (1) points to legislative history underlying the GCA, which he argues undermines Defendants' position and the findings of the courts mentioned

above, (2) draws comparison to the ATF's generally similar adjudicatory hearing procedures for the denial/revocation of an explosives license (or permit) under 18 U.S.C. § 843 in seeking to establish that FFL proceedings lack necessary due process protections, (3) argues that various ATF rules and regulations establish that a hearing conducted under 18 U.S.C. § 923(f) is a hearing "on the record" for purposes of the APA, and (4) seeks to distinguish the terms "de novo judicial review" in 18 U.S.C. § 923 and "trial of the law and the facts de novo in court" in 5 U.S.C. § 554(a)(1), with the aim of establishing that the former does not constitute the later for exemption purposes under the APA. (*See generally*, Docs. 1, 17). The Court will briefly address each of these reasons below.

As to Plaintiff's legislative history argument, a foundational building block of his position that the APA does (or should) apply to denial/revocation hearings is a single sentence from a 1968 Senate Report, which states, "[o]f course, 5 U.S.C., § 556-558, and related sections of Title 5 of the United States Code are applicable in actions with respect to licensing under this title." *See* S. Rep. 90-1097, 1968 U.S.C.C.A.N. 2122, 2206. However, the Supreme Court has made clear that "legislative history is not the law ... and even those of us who believe that clear legislative history can illuminate ambiguous text won't allow ambiguous legislative history to muddy clear statutory language." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1814 (2019) (citations and internal quotations omitted).

Plaintiff's use of a single sentence from a 1968 Senate Report demonstrates ambiguous legislative history at best. This is especially true when considering, as

13

Defendants point out in their reply brief, the fact that Congress subsequently changed the language of the GCA via enactment of the Firearms Owners' Protection Act of 1986 ("FOPA"). (*See* Doc. 18, PageID.648-49). And, among FOPA's many changes were a reworking of 18 U.S.C. § 923(f)(3) to change the phrase "judicial review" to "de novo judicial review" and the addition of a sentence emphasizing the ability of reviewing courts to consider additional evidence not submitted during the administrative proceedings. Indeed, FOPA's legislative history indicates these changes were intended to "encourage de novo judicial hearings" and address prior decisions which had "avoid[ed] a formal fact-finding hearing unless 'substantial doubt' as to the factual findings of the Secretary [was] apparent." *See* S. Rep. 98-583 at p. 14 (1984).[8]

The undersigned finds these changes significant and evidence that, even if Congress had intended (again, ambiguously at best) for the APA to apply to FFL hearings in 1968, such an intent was not clearly present when the GCA was amended by FOPA in 1986. Accordingly, the undersigned views Plaintiffs' legislative history argument as unavailing, notes that its use does nothing more than "muddy clear statutory language," *see Azar*, 139 S. Ct. at 1814, and declines to undermine otherwise good caselaw based solely on this single sentence.

---

[8] While there was no Senate Report on FOPA itself, Pub. L. 99-308, the Senate Report cited above (S. Rep. No. 98-583) accompanied S. 914, "the substantially similar predecessor to S. 49, the Senate bill which was the basis for Pub. L. No. 99-308 [FOPA]." *National Rifle Ass'n v. Brady*, 914 F.2d 475, n.2 (4th Cir. 1990). The prior decisions referenced in this report include *Perri v. Dept. of Treasury, BATF*, 637 F.2d 1332 (9th Cir. 1981) and *Cucchara v. Sec'y of Treasury*, 652 F. 2d 28 (9th Cir. 1981), both of which affirmed district court decisions where additional evidence was received into the record, but no evidentiary hearing was held, and the district court entered judgment in favor of the ATF upon a determination that the newly-submitted evidence did not otherwise call into doubt the ATF's findings in the administrative record.

Plaintiff's comparison to the generally similar adjudicatory hearing procedure for explosives licensing is not entirely clear, but in any event, it is also unpersuasive and not supported by any authority. Plaintiff appears to argue that: (1) the processes are generally similar, but (2) there are more due process protections for explosives applicants (namely, the use of an administrative law judge), and (3) there is no apparent statutory basis for the difference, therefore (4) FFL applicants lack the same due process protections afforded to explosives license applicants. (*See* Doc. 17, PageID.620-23).

Defendants note the two processes are entirely different statutory schemes and point the Court to a recent unpublished Sixth Circuit opinion which states in relevant part, "[c]ourts that have examined the ATF's hearing process for license revocations and denials have generally found the process to be constitutionally sufficient under the *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976)] balancing test." *Fulkerson v. Sessions*, 2018 U.S. App. LEXIS 7536, *9 (6th Cir. 2018) (compiling cases and "see[ing] no reason to conclude otherwise."). (Doc. 18, PageID.643-46). While the Sixth Circuit's unpublished decision is not binding on this Court, the undersigned is not inclined to disregard its reasoning nor the reasoning of other courts concluding the same. *See e.g., Weaver v. Harris*, 486 F. App'x 503, 506 (5th Cir. 2012) (finding due process not implicated when Plaintiff merely "provides various generalized examples of additional procedures he wishes were in place during his [FFL] revocation proceedings…"). *Mathews* instructs simply that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful

manner." 424 U.S. at 333 (citation and internal quotation omitted). In the present case, Plaintiff was provided with both notice and a meaningful opportunity to be heard, fulfilling those fundamental requirements. The fact that a separate statutory scheme offers more due process protections does not change this result.[9]

Plaintiff's use of language in ATF rules and regulations, which according to him, establishes that FFL hearings are conducted "on the record," (Doc. 17, PageID.623-26), is further unpersuasive. Specifically, Plaintiff directs the Court's attention to "Notice 36N." *See* 75 Fed. Reg. 48362 (August 10, 2010). This general notice, entitled "Hearing Procedures Relating to Federal Firearms Licenses (2010R-2T)," explains many details of the FFL hearing process. *Id*. Plaintiff points to specific language contained therein, which at various points, makes statements such as:

- "The hearing shall be recorded."
- "The tape of recording, along with the exhibits, shall constitute the official record of the hearing."
- "Any person (*sic*.) desiring a copy of the official record of the hearing may make a written request…"
- "The hearing officer shall ensure the hearing has been recorded properly."

(*See* Doc. 17, PageID.624-25 (citing 75 Fed. Reg. at *48364)).

---

[9] Plaintiff's comparison argument actually strengthens the basis for the Court's finding on the statutory interpretation of the GCA, discussed *supra*. In examining the statutory text of these two schemes, there are several key differences, but one stands out among the rest. *Compare* 18 U.S.C. § 843(e) (explosives) *with* 18 U.S.C. § 923(f) (firearms). Whereas Congress included language that judicial review of an explosives adjudication would be conducted pursuant to 5 U.S.C. §§ 701-706, no such language is included in 18 U.S.C. § 923(f)(3). Accordingly, this speaks to the intentional difference in the choice of language used by Congress in enacting the two statutory schemes, further demonstrating that this Court need not look beyond the face of the GCA to determine whether the APA applies to FFL proceedings. *See Shockley*, 686 F.3d at 1235 (citation omitted).

According to Plaintiff, such statements "make[] clear that the ATF's firearms licensure hearings … are, and are required to be, conducted 'on the record.'" (Doc. 17, PageID.625). However, just because the ATF utilizes a "record" for purposes of its administrative adjudication and recordkeeping, does not mean that such a proceeding is "on the record" for purposes of the APA. Defendants argue as much, characterizing the ATF's use of a court reporter to make a record of the proceedings as an "election to generate a record below when not statutorily obligated to do so." (Doc. 18, PageID.643). The undersigned agrees with Defendants' position on this point. Conducting a hearing on a record for internal agency purposes is not the same as conducting a hearing "on the record" pursuant to the APA. The GCA does not require APA-compliant "on the record" hearings, and the ATF's decision to maintain a record does not otherwise transform a non-APA proceeding into one governed by the APA.

Plaintiff's final argument deals with Defendants' fallback position that, even if the GCA did call for an "on the record" hearing, the "de novo judicial review" called for by 18 U.S.C. § 923(3)(f) renders the matter one which is "subject to a subsequent trial of the law and the facts de novo in court" under 5 U.S.C. § 554(a)(1). Plaintiff argues – again, with no authority in support – that the words "trial" and "review" are not the same, such that any "de novo judicial review" of an FFL denial/revocation decision is not truly a "trial of the law and the facts de novo in court." (*See* Doc. 17, PageID.626-27). However, as previously discussed, the language of the GCA gives a district court discretion in reviewing ATF denial/revocation decisions – such that it may conduct a full trial or simply engage in a *de novo* review of the ATF decision. *See*

*Arwady*, 507 F. Supp. 2d at 760 ("[W]hile a district court may conduct a trial de novo of the ATF's license denial decision, it is not required to do so." (citing *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 466 (7th Cir. 1980)). Thus, the short answer is that "de novo judicial review" *could* become a "trial of the law and facts de novo in court," but it does not *need* to become one unless the district court finds it to be necessary. In either situation, the review remains *de novo* because the ATF's decision is not entitled to any weight. *See Willingham Sports, Inc.*, 348 F. Supp. 2d at 1306. Moreover, whether a matter falls within an APA exception "does not turn on whether there was in fact a subsequent trial de novo but on whether the administrative proceeding was of the sort which was 'subject to' subsequent de novo judicial inquiry." *D'Angelo v. Dep't of the Navy*, 593 F. Supp. 1307, 1310 (E.D. Pa. 1984). Per the GCA, FFL denial/revocation decisions are certainly "subject to" a "trial of the law and the facts de novo in court" – whether such a trial is actually conducted remains within the discretion of the district court. In any event, such an opportunity for *de novo* review renders the exemption under 5 U.S.C. § 554(a)(1) applicable to FFL hearings.

## IV. Conclusion

For the reasons stated herein, the undersigned finds the statutory language on the face of the GCA to be self-explanatory as not requiring an FFL denial/revocation hearing to be conducted "on the record" for purposes of the APA. Moreover, because these hearings are subject to *de novo* judicial review by the relevant district court, they are exempted from the APA by its own terms. For these reasons, Plaintiff's count three fails to state a claim upon which relief can be granted.

In accordance with the foregoing analysis, the undersigned **RECOMMENDS** that Defendants' motion to dismiss count three (Doc. 14) be **GRANTED**, and that count three of Plaintiff's complaint be **DISMISSED with prejudice**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 17th day of November 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**