IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PRESTON B. TOWNSON,     :<br>     Plaintiff,     : | |
| : | |
| v.     : | CIVIL ACTION 1:22-00251-KD-N |
| : | |
| MERRICK GARLAND, UNITED     :<br>STATES ATTORNEY GENERAL, *et al.*,     :<br>     Defendants.     : | |

ORDER

This matter came before the Court for an evidentiary hearing related to a *de novo* review, pursuant to 18 U.S.C. § 923(f)(3), of an appeal of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)'s denial of Plaintiff Preston Townson (Preston)'s federal firearms license application. (Doc. 1; Doc. 1 at 3-17). Upon consideration of the testimony, evidence, and arguments submitted to the Court at the evidentiary hearing, the certified administrative record, and the SDAL record, the Court finds the evidence is insufficient to support the ATF's denial on the basis that the applicant made willful misstatements and omissions on his application. The evidence is also insufficient to find that Preston was not the true applicant.

**I.      Background**

The ATF reviews, regulates, and renders determinations on federal firearm license (FFL) applications pursuant to – and to ensure compliance with -- the *Gun Control Act* (GCA), 18 U.S.C. § 922 *et seq.*, as part of its duties to enforce federal regulatory requirements for licensed firearms. (Doc. 29 at 16-18 (3/8/22 Admin. Hrg, at 10-12 Burke)). Pursuant to the GCA, all persons "engage[d] in the business of importing, manufacturing, or dealing in firearms," must be properly licensed. 18 U.S.C. § 923(a). This appeal concerns Preston Townson's application for an FFL which was denied by ATF.

On June 27, 2022, Preston Townson initiated this action against Defendants Merrick B. Garland, in his capacity as the Attorney General of the United States of America, the United States Department of Justice, and the Bureau of Alcohol, Tobacco, Firearms and Explosives, pursuant to 18 U.S.C. § 923(f)(3), seeking *de novo* judicial review of the Attorney General's Final Notice denying his FFL application. In doing so, Plaintiff alleged: 1) violations of 18 U.S.C. § 923(d) (Count 1); 2) contravention of ATF policies and procedures (Count 2); 3) failure to conduct a hearing per the *Administrative Procedures Act* (APA) (5 U.S.C. § 701) (Count 3); and 4) a claim for statutory attorneys' fees (Count 4). (Doc. 1). As such, this action as to Counts 1-2 is a *de novo* judicial review of an ATF administrative denial pursuant to Section 923(f)(3). Based on the Court's determination, *infra*, the Court finds it unnecessary to address plaintiff's claim that the hearing should have been but was not conducted pursuant to the APA.

## II.     Findings of Fact

For several years, Bobby Townson (Bobby) operated "Bobby's Guns and Ammo," a sporting, fishing, hunting, and gun store located at 336 Douglas Avenue in Brewton, AL, for which an FFL was required (as to the firearms). On April 11, 2018, Bobby was notified by ATF that his FFL was being revoked for transferring firearms to underage individuals and falsifying government documents. (Doc. 28, Page I.D. 775-776)). On April 16, 2018, Bobby contacted ATF about his wife, Lori Townson, obtaining an FFL. On May 22, 2018, Lori applied to the ATF for an FFL. It was subsequently determined, through the ATF investigating the application, that Lori had contributed to the prior false ATF forms submitted by Bobby and that she could not explain the basic plan for her business. (Doc. 28, page I.D. 781-783, 1342-1344). On September 28, 2018, Lori withdrew her application.

On September 11, 2018, existing FFL licensee and non-party John Marshall Gleaton (Gleaton), applied to amend his FFL license to move his existing firearms business to the physical premises of Bobby's Guns and Ammo at 336 Douglas Avenue in Brewton, AL (owned by Bobby) (where he would lease the physical premises) and to change his firearms business' trade name from Gleaton's Gun to Bobby's Guns and Ammo. Gleaton indicated that he planned to lease the building from Bobby and purchase the business and inventory from Bobby (9/11/18 Letter of Intent). Gleaton disclosed that Bobby would operate a secondary insurance business in a distinct space in the business' physical premises. Gleaton denied Bobby would be involved in the business. ATF issued an FFL to Gleaton for a firearms business at Bobby's Guns and Ammo.

Subsequently, through another FFL holder, it was discovered by ATF that Bobby continued to sell firearms on Facebook and through Bobby's Guns and Ammo. In June 2020, ATF began a preliminary investigation and firearms compliance inspection of FFL licensee Gleaton and his business Bobby's Guns and Ammo. This investigation determined that Gleaton, and Gleaton admitted, that he was acting as a strawman for Bobby by holding the FFL license and that Bobby continued to buy and sell firearms. Also, Gleaton admitted that the lease and purchase agreement between Bobby and Gleaton was a façade, in that Bobby never attempted to collect the amounts due under either. Bobby maintained a security interest in the inventory and has since claimed the inventory through Gleaton's default. Gleaton voluntarily surrendered his license in April 2021. Gleaton warned the ATF that Bobby was going to arrange for Preston Bobby Townson (Bobby's son) to take over the business. (Doc. 28, Page ID. 787-802).

Preston Townson (Preston), now 25 years old, lives in Brewton, AL. Preston is not a prohibited person under either the GCA or Alabama state law, he has never held an FFL, and he has never been listed as a responsibility party on an FFL. Preston is Bobby's son. From 2016

through May 2017, then high-schooler Preston worked part-time at his father Bobby's sporting, fishing, hunting, and gun store called Bobby's Guns and Ammo, located at 336 Douglas Avenue in Brewton, AL.  In the afternoons after school, Preston sold hunting gear and ammunition and took engaged in cleaning duties but had no supervisory responsibilities and did not handle firearms paperwork.

In 2018, when Bobby lost his FFL license, Preston was 19 years old. At that time, however, Preston was not working at Bobby's Gun and Ammo but was working as an insurance agent. In 2020, Preston returned to work part-time at Bobby's Gun and Ammo for Gleaton. There is no evidence in the record that Preston participated or knew about Bobby's misdeeds in relation to selling firearms or Bobby's arrangement with Gleaton. (Doc. 28, page ID. 860).[1]

In April 2021, Preston turned 22, married, was working as a licensed insurance agent and working part-time at Bobby's Gun and Ammo. At this point Gleaton had surrendered his FFL license.  Therefore, Bobby's Gun and Ammo was only able to sell sporting goods and ammo (not firearms).  Preston sought to take over Bobby's Gun and Ammo but needed an FFL to be able to sell the primary merchandise, firearms.   Unfortunately for Preston, ATF was suspicious of his intentions from the start.

In April 2021, Preston applied for an FFL. (Doc. 28, page I.D. 1215). An interview was set for June 2021.  On June 16, 2021, Bobby signed a statement (as lessor) indicating that that he was "leasing Bobby's Guns and Ammo to Preston Townson for $5,500 a month. This includes, property, building and inventory. I understand ATF can come in at any time to check our records."

---

[1] At the hearing, ATF asserts that Preston, while an employee, made errors in imputing information regarding acquisitions and distributions, but provided no specifics. ATF also asserted that Preston "knowingly worked for a business being owned and operated by a previous willful violator of the Gun Control Act." Assuming this is an accusation that Preston knew of Bobby's misdeeds, no such evidence was presented to substantiate same.

Preston did not sign this statement but when Preston was interviewed by ATF in June of 2021 he gave the agents Bobby's statement. Preston indicated in the interview that he would be operating out of Bobby's building and would be selling Bobby's inventory of guns. Preston also stated that Bobby was currently on the Trustmark account that was the operating account for the store. Preston told ATF that in the future (once he obtained an FFL and could sell firearms), Bobby would not have managerial duties or powers in the business. (Doc. 28, page I.D. 924).

Based on its prior dealings with Bobby, ATF believed that Bobby would still be involved in Preston's firearms business. ATF concluded this primarily on the fact that because Bobby's name was currently on the Trustmark account, that Bobby could (and would) continue to purchase firearms for the business. ATF also relied on the fact that Bobby owned the building which entailed holding the insurance and supplying a security system.[2] ATF issued a notice of intent to deny the application on September 16, 2021. This denial notice indicated that ATF was denying the application because Preston had made material misstatements about Bobby's future involvement in the business. Thereafter, Preston engaged an attorney who requested a hearing and on December 30, 2021, submitted a written compliance plan for ATF's consideration. (Doc. 28, page I.D. 1237-1260).

The compliance plan explained that Preston had met with an attorney and a CPA, beginning in January 2021, to establish a business plan and arrange to acquire the inventory. The compliance plan also recognized the issues surrounding Bobby and indicated that Bobby would vacate the leased premises and Preston would institute other assurances that Bobby would not be involved in

---

2 In addition to Bobby's Guns and Ammo, Bobby operated an insurance business (Modern Woodmen) out of the same building.

selling firearms. The compliance plan indicated that Preston would lease the building from Bobby and that Preston had entered into a purchase agreement for the inventory that was contingent on Preston receiving an FFL.³ (Doc. 28, page I.D. 1237-1260). On March 8-9, 2022, a hearing was held on the application in Franklin, TN and was attended by Preston and his attorney. On May 4, 2022, ATF issued its denial of Preston's FFL application.

The ATF denied Preston's application under 18 U.S.C. § 923(d)(1)(D) claiming that he willfully made two materially false statements: i) that he was applying as a sole proprietor and ii) that the applicant's name was Preston Townson. ATF also claimed he willfully made two material omissions: i) omitting a trade or business name on the application and ii) he did not list his father, Bobby as a Responsible Person. ATF also denied the application claiming that Preston violated 18 U.S.C. § 923(d)(1)(C) because it concluded the true applicant was his father, Bobby.

The Court finds that ATF's determination that Preston willfully made false statements and omission are not adequately supported by the evidence of record. Therefore, ATF did not have the authority to deny the application based on the reasons stated.

### III. Conclusions of Law

Prestons' right to appeal the ATF's administrative decision is governed by 18 U.S.C. § 923(f)(3), which provides that one whose license application has been denied may timely:

> … file a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial … the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing … If the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court.

---

3 Unrefuted evidence at the hearing on 3/8/2022 was that Bobby had moved from the building in late 2021, and that since 2021 Preston has been operating the store selling sporting goods (but not firearms).

Id. In its *de novo* review then, the Court determines whether the Attorney General's decision (the ATF's decision) to deny an application was "authorized." Stein's Inc. v. Blumenthal, 649 F.2d 463, 464 n. 2 (7th Cir.1980). Additionally, as summarized in Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 348 F.Supp.2d 1299, 1306 (S.D. Ala. 2004):

> Case authorities make clear that the *de novo* standard of review means that the ATF's decision is entitled to no presumption of correctness and that the district court may attach such weight, if any, as it deems appropriate to the ATF's determinations and decision. *See, e.g., Stein's, Inc. v. Blumenthal,* 649 F.2d 463, 467 (7th Cir.1980) (explaining that under de novo standard of review in firearm licensing cases, "the trial court need not accord any particular weight to the Secretary's findings and decision," but that "it may, in the exercise of its discretion, accord them such weight as it believes they deserve"); *3 Bridges, Inc. v. United States*, 216 F.Supp.2d 655, 657 (E.D.Ky.2002) (ATF's "administrative decision is not clothed in this Court with any presumption of correctness"); *Weidner v. Kennedy*, 309 F.Supp. 1018, 1019 (C.D.Cal.1970) (same).

Moreover, ATF has the burden of proof to show that it was authorized to deny the application. See Harris News Agency, Inc. v. Bowers, 809 F.3d 411, 412 (8th Cir. 2015) ("[b]ecause the ATF did not show the Harris News officers and owners did anything to further the felon's possession of firearms, we reverse[]"); Powers v. Bureau of Alcohol, Tobacco and Firearms, Dept. of Treasury, 505 F.Supp. 695, 698 (N.D. Fla. 1980).[4]

ATF based its denial of Preston's application on 18 U.S.C. § 923(d)(l)(C) and (d)(l)(D) which provide:

> (d)(1) Any application submitted under subsection (a) or (b) of this section shall be approved if
>
>                     \*\*\*
>
>     (C) the applicant has not willfully violated any of the provisions of this chapter or regulations issued thereunder;

---

[4] "[T]he Government must prove not only that he [the applicant] violated the statutes and regulations, but that he willfully violated them. To prove a willful violation the Government "must prove that Petitioner knew of his legal obligation and purposefully disregarded or was plainly indifferent to the record-keeping requirements." *Shyda v. Director, Bureau of Alcohol, Tobacco and Firearms,* 448 F.Supp. 409, 415 (M.D.Pa.1977); *Lewin v. Blumenthal*, 590 F.2d 268 (8th Cir. 1979)." Powers, 505 F.Supp. at 698.

> (D) the applicant has not willfully failed to disclose any material information required, or has not made any false statement as to any material fact, in connection with his application;

The statute mandates that ATF shall approve an application unless it can demonstrate facts negating the applicant's statutory entitlement to a license. There are two initial elements. First, ATF must prove the disqualifying conduct is that of the applicant. Second, the applicant's conduct must be willful. Further, under Section 923(d)(1)(D), the information relates to a material fact.

### A.       Preston Applied as a Sole Proprietor

ATF asserts in Count 1.a. that Preston willfully made a materially false statement when he applied as a sole proprietor. ATF has the burden to prove that Preston, the applicant, made a false statement by applying as a sole proprietor, that the statement was materially false, and that it was willfully false in violation of a known legal duty. To be willful the conduct must either be an intentional violation of the law and/or the facts must establish that the violation arose from a purposeful disregard of or plain indifference to the laws and regulations imposed on firearms dealers. Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 415 F.3d 1274, 1277 (11th Cir. 2005).

Preston applied as a sole proprietor. (Doc. 28, PageID:1215). He discussed with Vance Kilgore, his CPA, and Charles Johns, his attorney, whether to apply as a sole proprietor and relied on their advice in doing so.  (Doc. 28, PageID:1077; Doc. 71, PageID:2791, ln 6-14). Johns stated that after reviewing Preston's business plan and objectives that he advised him to apply as a sole proprietor initially.  (Doc. 71, PageID:2621, ln 5, to PageID:2622, ln 20; PageID:2651, ln 17-24). Preston also discussed with his CPA Kilgore that he would operate as a sole proprietor initially. (Doc. 71, PageID:2658, ln 17-21; PageID:2660, ln 25 to PageID:2663, ln 13; PageID:2676, ln 16 to PageID:2677, ln 7).

The testimony of Preston, Kilgore, and Johns is consistent with the testimony of William Maxwell, ATFs Industry Operations Investigator (IOI), who stated that Preston told the ATF he was applying as a sole proprietor but that *in the future* he might want to change his business structure to an LLC. (Doc. 71, PageID:2686, ln 5-12; PageID:2687, ln 22 to PageID:2688, ln 3; PageID:2707, ln 5-25) Maxwell testified that an individual who was issued an FFL as a sole proprietor could not convert to an LLC without applying for a new FFL. (Doc. 71, PageID:2686, ln 13-22). When the Court asked IOI Maxwell what the basis for his concurrence was in [IOI Dixon's finding] -- that [Preston] made a materially false statement in identifying his business as a sole proprietorship, Maxwell responded that this conclusion was based on Preston's stated intent to form an LLC in the future. (Doc. 71, PageID:2716, ln 12 to PageID:2717, ln 25).

Evidence about whether Preston might form an LLC in the future, since there is no dispute that doing so would require a new FFL application, is irrelevant on the issue of whether Preston truthfully applied as a sole proprietor. The evidence that Preston would lease the business premise from his father, who had an LLC, if ATF issued Preston an FFL is irrelevant to whether Preston truthfully applied as a sole proprietor. Evidence that Preston, if issued an FFL*,* would purchase firearms and non-firearms inventory from his father is irrelevant to whether Preston truthfully applied as a sole proprietor.

Finally, and most importantly, evidence of how Bobby ran his firearms business prior to his 2018 revocation or evidence of the structure of the transactions between Bobby and John Gleaton under their 2018 Lease or 2018 asset Purchase Agreement is not a sufficient basis standing alone to determine that Preston was untruthful when he applied as a sole proprietor. ATF reviewed Preston's application with great skepticism based on the prior deceptive actions of Bobby. However, the prior actions of Preston's father are insufficient evidence of Preston's intentions. For

the United States to declare that a person has been willfully deceitful and then deprive that person of privileges afforded under the law, demands more than conjecture and suppositions. It requires that ATF demonstrate facts that make Preston ineligible.

The Court finds there is insufficient evidence that Preston's statements on his application or to the ATF during his application inspection that he was applying as a sole proprietor were willfully false. Accordingly, ATF was not authorized to deny the application under 18 U.S.C. 923(d)(1) on this basis.

**B.**     **Preston Applied in His Own Name**

ATF asserts in Count 1.b. that Preston willfully made a materially false statement when he applied in his own name rather than in the name of an LLC or his father. (Doc. 28, PageID:1459-1460). As indicated *supra*, there is insufficient factual evidence that Preston's application as a sole proprietor was a false statement. Thus, ATF was not authorized to deny a license under 18 U.S.C. § 923(d)(1) based on Preston's submission of an application in his own name.

During the hearing, as discussed in Section II.A, the Court asked Maxwell why ATF concluded Preston's statement that he was applying as a sole proprietor (in his own name) was false. (Doc. 71, PageID:2716, ln 12 to PageID:2717, ln 25). Maxwell gave no facts to demonstrate that Preston's statement was a material and willfully false statement of present conduct. Instead, Maxwell responded that he based this conclusion on Preston's intentions to form an LLC in the future which, as noted above, would require an entirely new application. Future intent to possibly to form an LLC and seek a second or amended FFL is irrelevant to whether Preston was truthfully applying in his own name to operate as a sole proprietor in 2021.

There is insufficient evidence that Preston's statements on his application or to the ATF during his application inspection that he was applying in his own name were willfully false.

10

Accordingly, ATF was not authorized to deny the application under 18 U.S.C. § 923(d)(1) based on Preston applying in his own name as opposed to an LLC.

### C. The Intent to Use Bobby's Guns and Ammo Was Not Concealed

ATF asserts in Count 1.c. that Preston willfully made a materially false omission concerning whether he would use the phrase Bobby's Guns and Ammo and, if so, whether that phrase was required to be identified by him as a trade name in Box 3 on the application. It was not disputed by ATF that Preston disclosed his intent to use Bobby's Guns and Ammo to ATF. ATF documented that disclosure and his intent in its SPARTAN records.

As for failing to include it as a trade name on the application, Preston consulted with a licensed Alabama attorney, Charles Johns, regarding his business structure as well as how he was going to complete his FFL application. Johns testified as to his familiarity with Preston, the sporting goods business he was wanting to acquire and its history. (Doc. 71, PageID:2620, ln 7 to PageID:2621, ln 19). Johns has knowledge of Alabama's laws regarding trade names. Johns did not advise Preston that the phrase Bobby's Guns and Ammo would constitute a trade name that needed to be added to the application. (Doc. 71, PageID:2626, ln 10-19). Further, Johns did not advise Preston what should be placed, if anything, in the trade name box on his FFL application. (Doc. 71, PageID:2627, ln 3-5).

Moreover, during the application interview Preston gave the ATF agent a copy of the business license that he had obtained. The business license clearly listed the business as Bobby's Gun and Ammo, Preston Townson. (Doc. 28, page I.D. 889-890, 13-87-1388).

Preston testified credibly that at the time that he applied for his FFL that he had never had any experience what a trade name meant. (Doc. 71, PageID:2790, ln 9-16). Preston thought at that time a trade name meant "trademark like the r with the circle around it"). (Doc. 28, PageID:1083).

There is simply insufficient evidence that Preston willfully made a material omission to the ATF regarding whether he intended to use the phrase Bobby's Guns and Ammo as a trade name if it issued him an FFL. Since Preston did not conceal his intent to use the phrase Bobby's Guns and Ammo and, further, since there is insufficient evidence that Preston willfully omitted this information or that it was a material omission, ATF was not authorized to deny the license under 18 U.S.C. § 923(d)(1) on this basis.

D.      **Whether Bobby was a Responsible Party**

ATF asserts in Count 1.d. that Preston willfully made a materially false omission concerning whether Bobby would be a responsible party with respect to Preston's application. 18 U.S.C. 841(s) provides: "Responsible person" means an individual who has the power to direct the management and policies of the applicant pertaining to explosive materials. However, in the application for an FFL license, ATF defines the term "Responsible Person" as: "In addition to a Sole Proprietor, a Responsible Person is, in the case of a Corporation, Partnership, or Association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management, policies, and practices of the Corporation, Partnership, or Association, insofar as they pertain to firearms. ATF Form 7(5310.12)/7CR(5310.16)(Revised October 2020). A plain reading of this definition of "responsible person" would lead a reader to believe that in a sole proprietorship, only the sole proprietor is the responsible party. Preston was applying as a sole proprietor.

Accordingly, there is insufficient evidence that Preston willfully made a material omission to the ATF regarding whether his father would be a responsible party under the proposed sole proprietorship. Accordingly, ATF was not authorized to deny the license under 18 U.S.C. § 923(d)(1) on this basis.

### E. Bobby Was Not the Applicant

ATF asserts in Count 2 that Bobby, not Preston, was the applicant. The statute limits the relevant inquiry "to *determine [the applicant's] eligibility* for licensing …" 18 U.S.C. § 923(a) (emphasis added). ATF's argument that Preston's was acting as a straw applicant on behalf of Bobby rests heavily on prior misconduct by Bobby. ATF recounts in detail the arrangement that Bobby had with Gleaton to continue to sell guns after Bobby's FFL license was revoked in 2018. This arrangement continued until ATF started an investigation and uncovered the arrangement in 2021.

During the investigation, in March 2021, Preston applied for an FFL. So, it is not surprising that ATF was suspicious. No doubt Preston would be relying heavily on Bobby (his father) to finance the operation. This is not an unusual arrangement for a family business when it is passed to the next generation. But there is a difference between financing a business and managing/owning a business; a distinction that is blurred by ATF.

ATF started with the assumption that Bobby was up to his prior tricks and then branded Preston a willful deceiver. The problem with this assumption and conclusion is that ATF fails to point to any conduct by Preston or evidence that Preston was involved in Bobby's prior misbehavior. In fact, Preston was a teenager when Bobby had a sham arrangement with a Gleaton to maintain the FFL.

ATF also fails to substantiate their assumption that Bobby would be the true owner of the business. ATF argues that the lease and purchase agreements between Bobby and Preston are a sham because Preston has not made payments, and this shows Bobby to be the true applicant. This argument fails to consider that the purchase agreement was specifically contingent on Preston

being granted an FFL. And it fails to consider that the lease agreement is also necessarily contingent on Preston's ability to sell the primary merchandise, i.e. firearms.

Next, ATF relies on the fact that in June 2021 Bobby was on the store's operating bank account and leaps to the conclusion that Bobby would continue to buy firearms for the store. And apparently even a detailed compliance plan submitted by Preston's attorney explaining the way the business would be ran (with no control or management by Bobby) if Preston is granted an FFL,[5] had no effect on this conclusion. Moreover, both CPA Kilgore and Attorney Johns testified that Bobby was not involved, not even in meeting with them, in the formation, control or management of Preston's business or plans. (Doc. 71, PageID:2627, ln-16-21; PageID:2663, ln 7 to PageID:2664, ln 1). It is noteworthy that CPA Kilgore, who had known Bobby and Preston for many years in a professional and personal capacity, was convinced that it was always Bobby's intent to turn the business over to Preston and "step out of the business." (Doc. 28, page I.D. 968)

The evidence credibly established that Preston was attempting to take over his father's business. But to do so he needed an FFL. And he needed his father's inventory and assets to run the business. ATF was rightfully suspicious considering Bobby's past actions. However, to find that Preston is a willful liar that is forever banned from an FFL should (and does) require reliable evidence. ATF has failed to produce such evidence. Speculation and assumptions are not evidence.

---

[5] ATF's application states that an applicant must within 30 days after the application is approved commence operations. (Doc. 72, PageID:2838). There is no requirement that the applicant have any bank accounts or even be in business until after the application is approved. (Doc. 71, PageID:2725, ln 9 to PageID:2726, ln 14).

**IV.    Conclusion**

Upon consideration, the Court finds that the Attorney General's decision to deny Preston's FFL application, on the grounds stated in its denial, was **NOT AUTHORIZED**. In such circumstances, Section 923(f)(3) instructs that "the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court."  "Regardless of what process the court chooses to follow, the statute only allows the district court to reverse the Attorney General's decision if it finds 'the Attorney General was not authorized ….' … *Cisewski v. Dept. of Treasury*, 773 F.Supp. 148, 150 (E.D.Wis.1991)." Pinion Enterp., Inc. v. Ashcroft, 371 F.Supp.2d 1311, 1315 (N.D. Ala. Jun. 3, 2005).

A review of Preston's Complaint (Doc. 1) does not specify – apart from requesting attorneys' fees and expenses – a remedy for the unauthorized denial of his FFL application. However, Preston's motion for summary judgment and post-hearing brief both request that if the decision is found "not authorized," that the ATF "be ordered to issue the federal firearms license to him."  (Doc. 34 at 1, 48; Doc. 78 at 15).

While caselaw is sparse and most address license revocations, courts have suggested the propriety of setting aside the ATF's decision "if it could be said here that Defendant's decision was unsupported, and thus 'not authorized,' absent a finding of a willful violation, then it would be appropriate to set aside the decision and either order that a license be granted or, perhaps, order a remand for further proceedings[]" (Morgan v. U.S. Dept. of Justice, Bureau of Alcohol, Tobacco, Firearms & Explosives, 473 F.Supp.2d 756, 773 (E.D. Mich. 2007)); setting aside a revocation of a license and remanding the matter with instructions to impose only a suspension for a period of time because willful violations had not been shown (only negligent) ((Rich v. U.S., 383 F.Supp. 797, 802 (S.D. Ohio 1974) (remand); and reinstating a revoked license if "not authorized"

15

(Cisewski v. Dept. of Treasury, 773 F.Supp. 148, 150 (E.D.Wis.1991)).  The Court has not located caselaw supporting the propriety of the undersigned unilaterally ordering the ATF to issue a FFL to a previously denied applicant.

Considering the foregoing, it is **ORDERED** that the ATF's denial of Preston's FFL application is **SET ASIDE** as "not authorized" and this matter is **REMANDED** to the Attorney General (the ATF) for further proceedings consistent with this ruling.

Any request for attorney's fees must be filed pursuant to the *Equal Access to Justice Act*.

**DONE** and **ORDERED** this the **1st** day of **March 2024.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**