**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PRESTON B. TOWNSON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION 1:22-00251-KD-N** |
| | : | |
| **MERRICK GARLAND, UNITED** | : | |
| **STATES ATTORNEY GENERAL,** *et al.,* | : | |
| **Defendants.** | : | |

**<u>ORDER</u>**

This matter is before the Court on Plaintiff Preston Townson's ("Preston") Motion for Award of Attorney's Fees and Expenses, (Doc. 83), and Memorandum in Support thereof, (Doc. 84), Defendants Merrick Garland, Attorney General of the United States, the United States Department of Justice, and the Bureau of Alcohol, Tobacco, Firearms and Explosives' ("ATF") (collectively, the "United States") Response, (Doc. 86), and Preston's Reply, (Doc. 87).

On March 1, 2024, this Court issued an Order, pursuant to 18 U.S.C. § 923(f)(3), setting aside the ATF's denial of Preston's federal firearms license ("FFL") as not authorized and remanding the matter back to the ATF for further proceedings consistent with the ruling. (Doc. 79).[1] ATF issued Preston's FFL on April 4, 2024, without additional administrative review. (Doc. 86 at 12). Accordingly, the only remaining controversy before the Court is Preston's motion for an award of attorney's fees and litigation expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). (See Doc. 84 at 1). Upon consideration and for the reasons set forth herein, it is **ORDERED** that Preston's Motion, (Doc. 83), is **GRANTED in part and**

---

[1] On March 26, 2024, the Court amended its Order to reflect the fact that Count 3 of the Complaint was dismissed upon the Court's December 2022 adoption of the Report and Recommendation of the Magistrate Judge. (Doc. 82 at 2).

**DENIED in part** as follows: Preston is entitled to an EAJA award of **$79,971.75** in attorney's fees and **$3,239.94** in expenses, for a total of **$83,211.69**.

## I.     LEGAL STANDARD

The so-called "American Rule" is that ordinarily, absent some statutory authorization to the contrary, each party to a lawsuit will bear its own attorney's fees. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 245 (1975). EAJA provides a basis for the prevailing party in civil litigation against the United States to receive an award of attorney's fees and other expenses provided that certain conditions are met. See § 2412(d)(1)(A). It reads:

> (d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

> (B) A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought. . . .

> (2) For purposes of this subsection –

>> (A) "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded

in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.);

(B) "party" means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed . . . .

§ 2412(d).

The United States shall also be liable for such fees and expenses to the same extent that a private party would be liable under the common law or by statute. § 2412(b). EAJA's purpose is to "eliminate for the average person the financial disincentive to challenge unreasonable government actions." Comm'r, I.N.S. v. Jean, 496 U.S. 154, 163 (1990). To be entitled to the award of attorney's fees and costs, (1) the party seeking such fees must be the "prevailing party" in a civil action brought by or against the United States; (2) an application for such fees, including an itemized justification for the amount requested, must be timely filed within 30 days of final judgment in the action; (3) the position of the government must not have been substantially justified; and (4) there must be no special circumstances that make an award unjust. Canady v. Sullivan, 893 F.2d 1241, 1243 (11th Cir. 1990) (per curiam).

A party is a "prevailing party" under EAJA when "he or she has received substantially the relief requested or has been successful on the central issue." Jean v. Nelson, 863 F.2d 759, 765 (11th Cir. 1988), aff'd sub nom. Comm'r, I.N.S., 496 U.S. 154. "[I]t is well-established that a party need not obtain relief on every claim or legal theory it propounds in order to be considered 'prevailing' under a fee-shifting statute." Jean, 863 F.2d at 766. In the analogous context of the Civil Rights Attorney's Fees Act, 42 U.S.C. § 1988, the Supreme Court has explained that a person may be considered a "prevailing party" when they have established their

entitlement "to some relief on the merits of [their] claims, either in the trial court or on appeal." Hanrahan v. Hampton, 446 U.S. 754, 757 (1980). The Eleventh Circuit has applied these standards in the EAJA context, such that the plaintiff "need not prevail on all legal issues." Jean, 863 F.2d at 766.

To be "substantially justified," the United States' position must have had a "reasonable basis both in law and fact." Pierce v. Underwood, 487 U.S. 552, 565 (1988). "Factors considered, but held not individually dispositive on the facts in Pierce, included: (1) the state at which the litigation was resolved; (2) views expressed by other courts on the merits; and (3) the legal merits of the government's position." Jean, 863 F.2d at 767. Other factors that the Eleventh Circuit will appraise include (1) the clarity of the governing law; (2) the foreseeable length and complexity of the litigation; and (3) the consistency of the government's position. Id. "Of course, these guideposts are not intended to be an exhaustive list of all the factors a district court, acting in its discretion, may undertake to review." Id. at 767–68. "Where, as here, the Government loses its case on the merits, it bears the burden of showing that its position was 'substantially justified.'" WHR Grp., Inc. v. U.S., 121 Fed. Cl. 673, 677 (2015); Lumpkin v. Barnhart, 493 F. Supp. 2d 1199, 1202 (S.D. Ala. 2006) (same).

No award of attorney's fees is automatic, and while eligibility for fees is established upon satisfaction of the four elements laid out *supra*, "a district court will always retain substantial discretion in fixing the amount of an EAJA award." Comm'r, I.N.S., 496 U.S. at 163. Courts are obligated to independently assess the propriety and amount of any EAJA award. Design and Prod., Inc. v. U.S., 21 Cl. Ct. 145, 151–52 (1990).

Additionally, a prevailing party is entitled to "a judgment for costs, as enumerated in" 28 U.S.C. § 1920. § 2412(a)(1).

## II.    ANALYSIS

"[F]ee counsel bears the burden in the first instance of supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained the records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). Mr. Harris's itemized affidavit attached to Preston's motion for award of attorney's fees (the "Itemized Invoice"), (Doc. 83-7), fulfills this initial burden. (See also Doc. 83-5).

The United States does not contest that Preston is a "prevailing party" with respect to Counts 1 and 2 of the Complaint;[2] that he timely filed his motion for attorney's fees and other expenses within 30 days of final judgment;[3] or his financial eligibility to receive an EAJA award.[4] (Doc. 86 at 10). It also "declines to relitigate the merits of the case through the lens of substantial justification."[5] (Id.). Rather, it disputes his entitlement to fees and costs associated with his pre-litigation administrative proceedings before the ATF; challenges "Preston's status as

---

[2] The Court ordered the ATF's denial of Preston's FFL application to be set aside as "not authorized" and remanded the matter to the ATF for proceedings consistent with the ruling, (Doc. 79 at 16), and entered judgment in favor of Preston and against the United States, (Doc. 80), undoubtedly making Preston a "prevailing party" under EAJA. See Jean, 863 F.2d at 766 (reasoning that the plaintiff need not succeed on all legal issues to "prevail" under EAJA but only must prove "his entitlement to *some* relief on the *merits* of his claims, either in the trial court or on appeal") (emphasis included and internal citation omitted).

[3] The Court issued its Order setting aside the ATF's denial of Preston's FFL application on March 1, 2024, (Doc. 79), and issued its Judgment on March 11, 2024, (Doc. 80), while Preston filed his motion, (Doc. 84), on March 28, 2024, meaning that it was timely filed under EAJA.

[4] Preston testifies that at the time of filing this civil action, his net worth did not exceed $2,000,000 and the net worth of his sole proprietorship did not exceed $7,000,000 or have more than 500 employees, (Doc. 83-4 at 1), making him an eligible "party" per § 2412(d)(2)(B).

[5] Preston is only required to *allege* that the ATF's position was "not substantially justified." Scarborough v. Principi, 541 U.S. 401, 414 (2004). He does just that. (See Doc. 84 at 5–7). By not disputing Preston's allegation, the United States fails to carry its burden under applicable law. See Lumpkin, 493 F. Supp. 2d at 1202 ("Though Defendant bears the burden of showing that its position was substantially justified . . . ."); Scarborough, 541 U.S. at 414 ("The burden of establishing 'that the position of the United States was substantially justified,' § 2412(d)(1)(A) indicates and courts uniformly have recognized, must be shouldered by the Government.").

the prevailing party on Count 3 and on his motion to amend his complaint"; asks for a reduction in Mr. Harris's requested hourly rate of $450 and the $120 per hour requested paralegal rate and objects to Preston's ability to obtain fees for law student work; and finally wants an across-the-board cut of 10%. (Id. at 10–24).

The Court addresses each of the United States' arguments in turn but accepts the Itemized Invoice, (Doc. 83-7), summarized in the table below, as its starting point. (See also Doc. 83-5 at 4); cf. Norman, 836 F.2d at 1299 ("[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate."). In addition to the $145,198.78 in attorney's fees, Preston requests reimbursement of $3,239.94 in expenses. (Doc. 83-7 at 15).

|  | Harris | Associate | Paralegal | Student |  |
|---|---|---|---|---|---|
| Total Hours | 283.90 | 63.95 | 75.00 | 7.50 |  |
| Requested Hourly Rate | $450.00 | $125.00 | $120.00 | $60.00 |  |
| TOTAL (Total Hours × Requested Hourly Rate) | $127,755.00 | $7,993.75 | $9,000.00 | $450.00 | **$145,198.75** |

## A. Preston is Not Entitled to Fees Incurred for the Administrative Hearing

EAJA provides that a court awarding fees for judicial review proceedings of an "adversary adjudication" shall include in the award counsel's time devoted to the "adversary adjudication" to the extent authorized by 5 U.S.C. § 504(a). 28 U.S.C. § 2412(d)(3); Pollgreen v. Morris, 911 F.2d 527, 532 (11th Cir. 1990). An "adversary adjudication" means

an adjudication under section 554 of this title in which the position of the United States is represented by counsel or otherwise, but excludes an adjudication for the purpose of establishing or fixing a rate or for the purpose of granting or renewing a license, (ii) any appeal of a decision made pursuant to section 7103 of title 41 before an agency board of

contract appeals as provided in section 7105 of title 41, (iii) any hearing conducted under chapter 38 of title 31, and (iv) the Religious Freedom Restoration Act of 1993 . . . .

5 U.S.C. § 504(b)(1)(C). Here, the March 8–9, 2022, ATF hearing to review its decision to deny Preston's FFL application was conducted pursuant to 18 U.S.C. § 923(f). (Doc. 1-10 at 1; Doc. 1-11 at 1; Doc. 1-12). As Preston does not dispute, and as other courts have held, an informal hearing held pursuant to 18 U.S.C. § 923(f)(2) is not an "adversary adjudication" as defined in 5 U.S.C. § 504(b)(1)(C). See Harris News Agency, Inc. v. Bowers, No. 7:13-CV-5012, 2016 WL 3920163, at *7 n.18 (D. Neb. July 15, 2016).

   And yet, notwithstanding their nonadversarial nature, "administrative proceedings may be so 'intimately connected' with judicial proceedings as to be considered part of the 'civil action' for purposes of a fee award." Sullivan v. Hudson, 490 U.S. 877, 892 (1989) (interpreting "civil action" to cover administrative proceedings before the Social Security Administration that are on remand from the district court). However, the Eleventh Circuit has held that the district court's award of EAJA fees for time during which there was no pending or prior action in federal court related to the administrative proceedings constitutes an abuse of discretion. Pollgreen, 911 F.2d at 536 ("Unless there was a pending or prior action in federal court relating to the administrative proceedings, we can conceive of no way in which those proceedings could be construed as being intertwined with the (as yet nonexistent) civil action for purposes of an EAJA fee award."); accord Full Gospel Portland Church v. Thornburgh, 927 F.2d 628, 631 (D.C. Cir. 1991) (explaining that the pre-litigation administrative proceedings "were 'part of' the subsequent civil action only in the sense that they were reviewed by the district court at one point—but just as much (or as little) could be said of any judicially-reviewed agency action") (emphasis included). In other words, the Eleventh Circuit has limited Hudson's holding to cases

in which there is a post-litigation remand for further administrative proceedings. <u>Friends of Boundary Waters Wilderness v. Thomas</u>, 53 F.3d 881, 887 (8th Cir. 1995).

In accordance with <u>Pollgreen</u>, Preston is not entitled to receive EAJA fees for work dedicated to the pre-litigation administrative review of his FFL application. The Court agrees with the United States' computation of the non-recoverable hours attributable to that review.[6] (<u>See</u> Doc. 86 at 3). Accordingly, Mr. Harris's requested hours are reduced by **43.40**[7] and the requested paralegal hours are reduced by **9.7**.[8] Preston's requested costs will not be reduced by $947.10 because the undersigned finds persuasive Preston's argument that since the transcript of the two-day hearing was not filed by Defendants until January 26, 2023, (<u>see</u> Doc. 28), Preston would have had to pay to order the hearing transcript to draft the Complaint even if he had not done so in April 2022. (<u>See</u> Doc. 87 at 5).

### B. Preston's Fee Award is Reduced to Reflect the Complaint's Unsuccessful Count 3 but not for the Failed Motion to Amend or for Propounding <u>Bruen</u>-Related Arguments in his Summary Judgment Briefing

The Eleventh Circuit has adopted the reasoning of a Supreme Court case interpreting Section 1988, <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983), as generally applicable in the EAJA setting:

> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, . . . counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been "expended in pursuit of the ultimate result achieved." . . .
>
> In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court

---

[6] "The United States identifies this work as being performed from September 21, 2021, to May 10, 2022." (Doc. 86 at 3 n.1).
[7] Subtracting 43.40 of John Harris's hours from 283.9 yields **240.5** remaining hours for Mr. Harris.
[8] Subtracting 9.7 paralegal hours from 75 yields **65.3** remaining paralegal hours.

should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained. . . .

There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment. This discretion, however, must be exercised in light of the considerations we have identified.

Jean, 863 F.2d at 771 (quoting Hensley, 461 U.S. at 434–37); see also Gray ex rel. Alexander v. Bostic, 613 F.3d 1035, 1040 (11th Cir. 2010) ("The fact that a plaintiff succeeds in only a limited way does not strip her of prevailing party status, but the degree of her success is the most critical factor in determining the reasonableness of a fee award."). "Where all theories derive from a common core of operative facts, the focus should be on the significance of overall results as a function of total reasonable hours." Norman, 836 F.2d at 1302.

Here, the United States asks that Preston not recover fees "for work related to his failed Count 3 claims" and "failed motion to amend." (Doc. 86 at 12). On August 29, 2022, the United States moved to dismiss Count 3 of the Complaint, which asserted a claim for failure to conduct a hearing pursuant to the Administrative Procedures Act. (Doc. 14). In December 2022, the

Court adopted the Report and Recommendation ("R&R") of the Magistrate Judge, (Doc. 22), dismissing Count 3 of the Complaint. (Doc. 23). The United States proposes that Preston not recover for the hours spent on his Response to the United States' Motion to Dismiss Count 3, (Doc. 17), filed October 7. Upon independent review of the Itemized Invoice, the Court finds that Preston is not entitled to recover for **15.6** hours of Mr. Harris's work[9] and **0.9** hours of paralegal work[10] spent on opposition to the United States' ultimately successful Motion to Dismiss Count 3. See Norman, 836 F.2d at 1302 ("If the result was partial or limited success, then the lodestar must be reduced to an amount that is not excessive. . . . In doing so, the court may attempt to identify specific hours spent in unsuccessful claims or it may simply reduce the award by some proportion."); N. Ga. C.O.P.S. v. Reagan, 587 F. Supp. 1506, 1508 (N.D. Ga. 1984) ("The Eleventh Circuit has held that in cases arising under the EAJA plaintiffs can recover only those fees reasonably incurred in connection with claims they prevailed upon and not for claims which they lost or abandoned.") (citing Matthews v. U.S., 713 F.2d 677, 684 (11th Cir. 1983)).

In addition, "because Preston brought four claims in his Complaint and only prevailed on three, the United States proposes that the Court reduce Preston's requested hours for the Complaint by one-quarter." (Doc. 86 at 14). This the Court declines to do. As the Eleventh Circuit explained, "[i]t is improper to make the reduction based on a simple ratio of successful issues to issues raised." Norman, 836 F.2d at 1302. Preston also points out the arbitrariness of that request.[11]

---

[9] Subtracting 15.6 from 240.5 leaves **224.9** remaining hours for Mr. Harris.
[10] Subtracting 0.9 from 65.3 results in **64.4** remaining paralegal hours.
[11] "Defendants arbitrarily assert that the time that they have imputed as the work on the Complaint should be reduced by one-quarter[,] apparently since there are four counts. But, it could just as easily be argued that the Complaint was 39 pages[,] totaling 205 number[ed] paragraphs. Of that, Count 3 covers parts of pages 37 and 38 and spans only 7

The United States' argument that the Court should reduce Preston's requested hours spent on his motion to amend and summary judgment briefing by one-half to reflect the Court's Order denying Preston's motion for leave to file an amended complaint to bring <u>Bruen</u>-related claims,[12] (Doc. 52), must fail in the same manner. While on the one hand the Court is uncomfortable with rewarding a plaintiff who failed to demarcate counsel's time spent on separate (and unsuccessful) motions, the United States ultimately makes the same analytical mistake in its proposal as above.[13] More importantly, <u>Jean</u>'s instruction that when the plaintiff's claims for relief involve a "common core of facts . . . based on related legal theories," "[s]uch a lawsuit cannot be viewed as a series of discrete claims," prevails in this instance. <u>See</u> 863 F.2d at 771.

In other words, it seems more appropriate to *not* penalize Preston for unsuccessfully raising <u>Bruen</u>- related arguments in support of his motion for summary judgment,[14] (<u>see</u> Doc. 34 at 37–48), and in his motion for leave to file an amended complaint,[15] (Doc. 32), per <u>Jean</u>[16] than in the circumstance where the plaintiff fails in defending against the dismissal of a count in his complaint, where Eleventh Circuit precedent counseling in favor of a fee reduction is more clear.[17] Accordingly, the Court refuses to discount Preston's fee award by an imprecise estimate

---

paragraphs. It is not clear, then, why Defendants' 'one-quarter' argument is any more reasonable, or less arbitrary, than arguing that any adjustment should only be 2/39ths (if based on the number of pages) or 7/205ths if based on the number of paragraphs. Using either of these metrics to somehow segregate categories of billable time would result in materially different numbers than the 'one-quarter' factor that the Defendants propose." (Doc. 87 at 7).

[12] <u>See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen</u>, 597 U.S. 1 (2022).

[13] "Why half? Why not one-quarter? Why not one-third? Why not 19/68ths since Defendants are just arbitrarily counting pages?" (Doc. 87 at 7).

[14] On September 22, 2023, the Court ordered that the parties' cross-motions for summary judgment were denied. (Doc. 53 at 5).

[15] On May 1, 2023, the Court denied Plaintiff's motion for leave to file an amended complaint. (Doc. 52 at 9).

[16] "In these circumstances [where the plaintiff has "obtained excellent results"] the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." <u>Jean</u>, 863 F.2d at 771.

[17] "Following the Third Circuit, we adopt the position that the United States is only responsible for 'that portion of the expenses attributable to its unjustified positions.' 698 F.2d at 197. Consequently, Matthews is entitled to attorney's fees allocable to the claim upon which she prevailed." <u>Matthews</u>, 713 F.2d at 684.

of hours spent propounding <u>Bruen</u>-related arguments in his motions to amend and for summary judgment.

## C. Mr. Harris's Recoverable Hourly Rate is Set at $300

Because EAJA represents a partial waiver of the United States' sovereign immunity, its terms must be strictly construed. <u>Jean</u>, 863 F.2d at 775 ("If the award made by a court is to be based on rates in excess of the figure provided by the Act, it must be because the Act permits it."). While the amount of *reasonable* attorney's fees "shall be based upon prevailing market rates for the kind and quality of the services furnished," they are not recoverable in excess of $125 per hour "unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). EAJA's exception for "the limited availability of qualified attorneys for the proceedings involved" "refers to attorneys having some distinctive knowledge of specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation." <u>Pierce</u>, 487 U.S. at 572. Satisfactory examples include "an identifiable practice specialty such as patent law, or knowledge of foreign law or language," such that reimbursement above the statutory cap is permissible. <u>Id.</u>

> The EAJA therefore establishes a two-step analysis for determining the appropriate hourly rate to be applied in calculating attorney's fees under the Act. The first step in the analysis, as the district court correctly noted . . . is to determine the market rate for "similar services [provided] by lawyers of reasonably comparable skills, experience, and reputation." . . . The second step, which is needed only if the market rate is greater than $75 per hour, is to determine whether the court should adjust the hourly fee upward from $75 to take into account an increase in the cost of living, or a special factor.

<u>Meyer v. Sullivan</u>, 958 F.2d 1029, 1033–34 (11th Cir. 1992).

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman, 836 F.2d at 1299. The movant "bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just the affidavit of the attorney involved or self-serving *ipse dixit* that a requested rate is reasonable. Id. Instead, this evidence must reference rates actually billed and paid in similar litigation and "may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." Id. "The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." Id. The Court, itself an expert on the issue of reasonable hourly rates, "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." Id. at 1303; see also id. at 1301 ("It is the job of the district court to interpolate the reasonable rate based on an analysis of the skills enumerated above which were exhibited by the attorney in the case at bar . . . ."). That said, "a court should hesitate to give controlling weight to prior awards, even though they may be relevant." Dillard v. City of Greensboro, 213 F.3d 1347, 1355 (11th Cir. 2000).

The general rule is that the "relevant market" for purposes of ascertaining an attorney's reasonable hourly rate is the place where the case is filed—here, Mobile, Alabama. See ACLU of Ga. v. Barnes, 168 F.3d 423, 437 (11th Cir. 1999). Preston submits no evidence as to Mobile's market rate. "If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." Barnes, 168 F.3d at 437.

Here, Preston submits the affidavit of his pre-ATF dispute counsel, Charles E. Johns, Jr., who avers that he tried to locate an attorney "with a demonstrated distinctive knowledge and specialized skills in ATF licensure and agency procedures and could not identify such an attorney in [the Southern District of Alabama]." (Doc. 83-1 at 2). Mr. Johns subsequently identified Mr. Harris as an attorney having such knowledge and specialized skills. (Id.). He further testifies that "based on [his] involvement as a fact witness and as an attorney representing the clients other than with respect to the licensure dispute, this is not an area where even otherwise experienced attorneys would typically have the skills or distinctive experience to assist a client with these categories of administrative and litigation needs." (Id.). Preston confirms that he contacted Mr. Harris after Mr. Johns recommended retaining the services of more specialized counsel. (Doc. 83-4 at 2). Robert J. Olson, whose practice involves state and federal firearms laws, states that "[a]dministrative firearms licensure hearings are a niche within a niche," that Mr. Harris is "one of but a handful of practitioners" capable of competently handling administrative licensure appeals with the ATF, and that "Mr. Harris is *the only* attorney to whom [he] refer[s] [his] clients and others to handle the type of issues presented in this case." (Doc. 83-2 at 2) (emphasis included). David L. Raybin, a criminal and civil rights lawyer who is similarly licensed to practice in Tennessee and has experience with Second Amendment litigation, charges $450 per hour as his standard rate. (Doc. 83-3 at 2) ("In my opinion, [Mr. Harris's] requested rate is fair and reasonable and in line with attorneys of similar experience in Tennessee and in adjacent states.").

Despite the statement in Mr. Johns's affidavit that he could not identify an attorney "with a demonstrated distinctive knowledge and specialized skills in ATF licensure and agency procedures" in this district, (Doc. 83-1 at 2), the Court is unwilling to conclude that Nashville,

and not Mobile, is the "relevant market" for attorney's fee purposes. A district court clearly errs by awarding non-local rates without finding that the plaintiff established that there were no attorneys in the place where the case was filed who were willing and able to handle the case. Barnes, 168 F.3d at 437. While litigation reviewing ATF licensure decisions pursuant to 18 U.S.C. § 923(f)(3) is uncommon in this district, the Court has identified at least two such cases—albeit decades-old—where counsel that represented the plaintiffs are still practicing in Mobile.[18] Cf. Nail v. Shipp, No. 17-CV-195-KD-B, 2020 WL 1670459, at *3 (S.D. Ala. Apr. 3, 2020) ("The relevant market rate is Mobile, Alabama, not TN, and not Nashville, TN specifically, as counsel suggests. The Court's experience indicates that there is not a lack of attorneys in the local area . . . willing to take FLSA cases of merit."). Still, "[b]ased upon its own knowledge and experience, the Court finds that the prevailing market rate in the Mobile area for services similar to those performed by the Plaintiff's counsel in this action by lawyers of reasonably comparable skills, experience, and reputation exceeds $125 per hour." Powell v. O'Malley, No. 1:22-488-N, 2024 WL 116423, at *4 (S.D. Ala. Jan. 10, 2024).

Having assured itself that the "prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation," Norman, 836 F.2d at 1299, exceeds the statutory rate of $125 per hour, the Court considers whether to adjust the hourly fee upward from the statutory rate to account for inflation. See Meyer, 958 F.2d at 1033–34. "By allowing district courts to adjust upwardly the [$125] hourly fee cap to account for inflation, Congress undoubtedly expected that the courts would use the cost-of-living escalator to insulate EAJA awards from inflation . . . ." Id. at 1034. This Court's frequently used formula from Lucy v. Barnhart, No. 2:06-CV-147-C (S.D. Ala. July 5, 2007), the

---

[18] See Willingham Sports, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives, No.1:04-CV-121-WS-C (S.D. Ala. 2004) and Earl's Pawn & Jewelry, Inc. v. Ashcroft, No. 1:04-CV-649-BH-D (S.D. Ala. 2005).

applicability of which neither party disputes, "describe[s] mathematically the basis of all cost-of-living adjustments under [EAJA]," Jean, 863 F.2d at 773. The formula aims to adjust for increases in the cost of living as follows:

($125/hour) x (CPI–U[19] Annual Average "All Items Index," South Urban, for month and year of temporal midpoint)/152.4, where 152.4 equals the CPI–U of March 1996, the month and year in which the $125 cap was enacted.

Winters v. Astrue, No. 1:11-CV-261-CB-B, 2012 WL 1565953, at *2 (Apr. 9, 2012), rep. and recommendation adopted, 2012 WL 1556652 (S.D. Ala. Apr. 30, 2012) (citing Lucy, No. 2:06-CV-147-C). The "temporal midpoint" is calculated by counting the number of days from the date that the claim was filed to the date of the district court's order and judgment. Winters, 2012 WL 1565953 at *2.

Here, both parties agree that the temporal midpoint, considering that the Complaint was filed June 27, 2022, and that the Court set aside the ATF's denial of Preston's FFL application and remanded the matter to the ATF on March 1, 2024, is April 2023. (Doc. 84 at 8; Doc. 86 at 16). The South-Urban CPI-U for April 2023 is 295.315.[20] Per the Lucy formula, $125 × (295.315/152.4) = $242.22 per hour. In light of the increased cost of living and framed by its "own knowledge and experience concerning reasonable and proper fees," Norman, 836 F.2d at 1303, the Court finds that a rate of **$300 per hour** for Mr. Harris is appropriate here.[21]

---

[19] "CPI-U" is the Consumer Price Index for All Urban Consumers as set by the Bureau of Labor Statistics of the U.S. Department of Labor. https://www.bls.gov/cpi/data.htm.

[20] https://data.bls.gov/pdq/SurveyOutputServlet?series_id=CUUR0300SA0,CUUS0300SA0.

[21] While "[m]uch of the EAJA case law defines 'special factor' in § 2412(d)(2)(A)(ii) of the EAJA by what it is not," U.S. v. Aisenberg, 358 F.3d 1327, 1343 (11th Cir. 2004), special expertise in a "narrow legal specialty"—like immigration law—may entitle counsel to an upward adjustment if market rates for their services exceed the statutory rate, Jean, 863 F.2d at 774. The Court has credited Preston's argument that "[t]his action, similar to immigration law, involves a federal statutory and regulatory scheme under the Gun Control Act of 1968 . . .," (Doc. 84 at 10), in setting the $300 hourly rate for Mr. Harris. See Denny Mfg. Co, Inc. v. Drops & Props, Inc., No. 09-CV-214-KD-M, 2011 WL 2180358, at *4 (S.D. Ala. June 1, 2011) (considering the affidavit of a local intellectual property attorney "in support of the reasonableness of the hourly rates requested under the facts of this intellectual property litigation" but "relying upon its own expertise as to the reasonable hourly rates in this market and review of prior hourly rate awards" in setting the rate below what was requested).

### D. Preston's Requested Paralegal Hours are Reduced by 30% and the Paralegal Rate is Reduced to $100 per Hour

Fees for paralegal work are recoverable "to the extent that the paralegal performs work traditionally done by an attorney." Gowen Oil Co., Inc. v. Abraham, 511 F. App'x 930, 936 (11th Cir. 2013) (per curiam) (quoting Jean, 863 F.2d at 778). "To hold otherwise would be counterproductive because excluding reimbursement for such work might encourage attorneys to handle entire cases themselves, thereby achieving the same results at a higher overall cost." Jean, 863 F.2d at 778. A prevailing party that satisfies EAJA's prerequisites may recover paralegal fees at prevailing market rates. Richlin Sec. Serv. Co. v. Chertoff, 553 U.S. 571, 590 (2008).

Here, the United States argues that Preston's requested hourly rate of $120 for paralegal work is unreasonable. (Doc. 86 at 20–21). Harris testifies that Christy Frizzell[22] is his paralegal; has "over a decade of experience" assisting him in ATF-related matters "including license applications, licensure hearings, federal court proceedings and federal appellate work"; and that her "rate has been $120 per hour for approximately the last ten years." (Doc. 83-5 at 3).[23] The United States seeks to lower Preston's requested paralegal fees because "[a]bsent special circumstances, this Court has consistently found that the reasonable lodestar rate for paralegals in Mobile, Alabama is $75 per hour." (Doc. 86 at 21) (citing Nail, 2020 WL 1670459, at *4 and Oden v. Vilsack, No. 10-CV-212-KD-M, 2013 WL 4046456, at *7 (S.D. Ala. Aug. 9, 2013)). However, "a court should hesitate to give controlling weight to prior awards, even though they may be relevant." Dillard, 213 F.3d at 1354–55. The Court finds that, considering its own

---

[22] Christy Frizzell and Christy Wilson appear to be the same person. (Compare Doc. 84 at 16 with Doc. 83-7 at 15).

[23] (See also id.) ("I review the hourly rates annually and adjust them from time to time based on rates of other attorneys and legal staff who have general commercial and litigation practices in Nashville, Tennessee. I compare the hourly rates with attorneys who have practices similar to this with respect to federal agency and appellate matters. The hourly rates charged in this matter are consistent with the hourly rates known to me that are charged by other attorneys with similar years of experience and practice areas in Middle Tennessee.").

knowledge and experience with paralegal fees in the Mobile market, a paralegal rate of **$100 per hour** is reasonable under the circumstances.[24]

"Of course, reasonable hourly rates are only one parameter in the lodestar calculation. The other is the determination of reasonable hours." Johnson v. TMI Mgmt. Sys., Inc., No. 11-CV-221-WS-M, 2012 WL 4435304, at *4 (S.D. Ala. Sep. 26, 2012). "Work that may appropriately be performed by paralegals and billed to a client or a losing party includes factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." Nicholson v. RB2, LLC, No. 1:19-CV-344-TFM-N, 2021 WL 895602, at *3 (S.D. Ala. Mar. 9, 2021) (cleaned up). In other words, paralegal expenses are only recoverable to the extent that the work done is like that usually performed by lawyers. Coleman v. Houston Indep. Sch. Dist., 202 F.3d 264 (5th Cir. 1982). They are otherwise unrecoverable overhead expenses. Id.

Thus, purely clerical tasks, including preparing the summons and serving pleadings, as well as copying, filing, receiving, and mailing documents, are not compensable. Hill v. Kijakazi, No. 6:20-CV-1589-HNJ, 2022 WL 4285603, at *5 (N.D. Ala. May 4, 2022); see also Cormier v. ACAC Inc., No. 13-CV-158-CG-M, 2013 WL 6499703, at *5 (S.D. Ala. Dec. 11, 2013) ("Courts in this district generally consider tasks such as mailing and telefaxing correspondence, making routine calls to clients, obtaining pleadings from the court's database and printing documents as secretarial functions."); and Johnson, 2012 WL 4435304 at *5 (finding entries like "Update

---

[24] For example, in Laird v. Jiya Jeel LLC, No. 1:22-CV-259-KD-N (S.D. Ala. 2023) (Doc. 23 at 15), this Court found reasonable a $100/hour paralegal rate in a FLSA case. "Although the Court does not give controlling weight to prior awards, those awards are relevant and instructive in determining whether the 'requested rate is in line with prevailing market rates' in this district for attorneys of reasonably comparable skill, experience, and reputation to that of [the attorney] seeking an award of attorney's fees pursuant to a fee-shifting statute." Langford v. Hale Cnty. Ala. Comm'n, No. 2:14-CV-70-KD-M, 2016 WL 4976859, at *3 (S.D. Ala. Sep. 16, 2016).

correspondence section of file," "telephone call to client re: scheduling appointment," and "Receipt and download of Order" to be purely clerical work).

Here, Preston's invoice includes such excludable paralegal entries as "Begin Processing Service Packets for mailing via Certified Mail," "Pleadings filed in case; process pleadings; meeting with Mr. Harris; update file," and "Filing received in case; update file." (See Doc. 83-7). "When a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." Bivins v. Wrap It Up, Inc., 548 F.3d 1348, 1350 (11th Cir. 2008) (per curiam). Instead of assessing each paralegal time entry line-by-line and excluding purely clerical tasks, the Court will reduce the remaining paralegal hours by 30%. Cf. Johnson, 2012 WL 4435304, at *6 ("Rather than parsing the voluminous time entries on a line-by-line basis to identify and exclude purely clerical work performed by the paralegals, the Court imposes a 20% across-the-board cut . . . ."). Accordingly, the requested paralegal hours are reduced from 64.4 to **45.08**.[25]

### E.  The Requested Law Student Hours are Not Recoverable

Preston requests compensation for 7.5 hours of law-student work billed at a rate of $60 per hour. (Doc. 83-7 at 15). The United States disputes this rate as unreasonable "for work performed by a law student who does not have any experience as a paralegal or as an attorney" and characterizes the work performed as "unnecessary and redundant." (Doc. 86 at 21). The United States also points out that Preston offers no "case law or analysis in support of his request for fees based on law student work." (Id. at 20). Preston replies that law student outlined the January 10, 2024, hearing transcript to help prepare Preston's post-hearing memorandum and

---

[25] $64.4 \times 0.7 = 45.08$.

that, while Mr. Harris could have done that at a much higher rate, "it is also work that a competent law student in her third year could also perform." (Doc. 87 at 12).

While some courts have found law-student work to be recoverable under EAJA,[26] which may ultimately serve a cost-effective purpose,[27] Preston bears the burden of adducing "satisfactory evidence" that the $60 per hour law-student rate "is in line with prevailing market rates," which is "at a minimum more than the affidavit of the attorney performing the work." See Norman, 836 F.2d at 1299. Although the Court was willing to excuse Preston's failure to fulfill his burden of production as to the paralegal hours (despite applying a 30% across-the-board cut), it is unwilling to do the same for the 7.5 hours of law student work, which the Court finds **are not recoverable**.

### F.  An Additional Deduction for Unreasonable or Excessive Hours is Unjustified

"The United States disputes that the number of hours spent litigating this case—including the duplicative work performed by multiple contributors—was reasonable or necessary." (Doc. 86 at 21) (citing Garrett Invs., LLC v. SE Prop. Holdings, LLC, 956 F. Supp. 2d 1330, 1342–44 (S.D. Ala. 2013)) (concluding that some instances of redundant billing merited an across-the-board cut of 10%). Indeed, "excessive, redundant, or otherwise unnecessary" hours should be excluded from the number of hours claimed. Norman, 836 F.2d at 1301. Fee applicants are to

---

[26] See, e.g., Nadarajah v. Holder, 569 F.3d 906, 918 (9th Cir. 2009) (awarding the requested law-student-intern rate); Froio v. McDonald, 27 Vet. App. 352, 356 (2015) ("It is also well settled that attorney fees can be awarded pursuant to EAJA for work performed by attorney-supervised nonattorneys and law students."); Mills v. Saul, No. 1:17-CV-21832-JB, 2020 WL 10505706, at *3 (S.D. Fla. Sep. 11, 2020) ("Work done by attorney-supervised law students is eligible for billable fee awards under the EAJA."); Linder v. Sullivan, 799 F. Supp. 888, 893 (N.D. Ill. 1992) (considering the appropriate rate for a third-year law student); DiGennaro v. Bowen, 666 F. Supp. 426, 430 (E.D.N.Y. 1987) (holding that "uncompensated law students working in a clinical program under supervision of an attorney pursuant to the Student Practice Rule of the Eastern District of New York and approved by the court" may be entitled to an EAJA award for services as counsel to an indigent Social Security plaintiff); cf. Mo. v. Jenkins, 491 U.S. 274 (1989) (interpreting § 1988's fee-shifting provision to allow compensation for law-student work).

[27] See Williams v. Bowen, 684 F. Supp. 1305, 1308 (E.D. Pa. 1988) (explaining that "[i]f courts do not award compensation for the work of law students . . . they may handle entire cases themselves, thereby increasing the cost to the government").

exercise "billing judgment." Id. "Courts are not authorized to be generous with the money of others, and it is as much a duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded." Barnes, 168 F.3d at 428. As the district court "is charged with deducting for redundant hours," it must be "reasonably precise in excluding hours thought to be unreasonable or unnecessary." Norman, 836 F.2d at 1301. "In the final analysis, exclusions for excessive or unnecessary work on given tasks must be left to the discretion of the district court." Id.

The United States contends that Preston's application includes "redundant or duplicative work done by Mr. Harris, his associate counsel, his paralegal, and the law student," which it says ought to be reduced by an across-the-board 10% cut. (Doc. 86 at 22–23). Billing by multiple attorneys as timekeepers is proper "as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham, 706 F.2d 1205, 1208 (11th Cir. 1983). As a preliminary matter, Preston is right to call out the United States for failing to identify any specific time entries that were duplicatively billed. (See Doc. 87 at 12).[28] To allow courts to carry out their duties in this area, objections from fee opponents regarding hours that should be excluded must be "specific and reasonably precise." Barnes, 168 F.3d at 428 (internal quotations and citation omitted). Next, the Court's independent review of the Itemized Invoice, (Doc. 83-7), "does not reveal excessive, redundant, or unnecessary hours" but supports "a finding of reasonable hours billed." See Yates v. Mack, No. 20-CV-131-KD-B, 2022 WL 2308292, at *10 (S.D. Ala. June 27, 2022).

---

[28] (See also id. at 12–13) ("Certainly, Harris did not have multiple timekeepers involved in the Townson deposition— where the Defendants were represented by four attorneys. Harris did not have multiple timekeepers travel and participate in the January 10, 2024, hearing—where the Defendants were represented by three attorneys (including Division Counsel) and a paralegal. There is simply no evidence in the record to support the Defendants' assumption and speculation that redundant or duplicative work was performed and included in the time records for which fees are being requested.").

Accordingly, particularly in light of the hours already deducted from Preston's fee award as shown in the Court's analysis above, the Court declines to shave 10% off Preston's remaining requested attorney's fees.

### III.    CONCLUSION

In accordance with the foregoing analysis, Preston's Motion for Award of Attorney's Fees and Expenses, (Doc. 83), is **GRANTED in part and DENIED in part** in that Preston is awarded from the United States **$83,211.69** in attorney's fees and costs under EAJA as summarized below.

|  | Harris | Associate | Paralegal | Student |  |
|---|---|---|---|---|---|
| Total Recoverable Hours | 224.90 | 63.95 | 45.08 | — |  |
| Recoverable Hourly Rate | $300.00 | $125.00 | $100.00 | — |  |
| TOTAL (Total Recoverable Hours × Recoverable Hourly Rate) | $67,470.00 | $7,993.75 | $4,508.00 | $0 | **$79,971.75**[29] |

**DONE** and **ORDERED** this the **10th** day of **July 2024.**

**/s/ Kristi K. DuBose**
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

[29] This table excludes the **$3,239.94** that Preston is also due in litigation expenses. $79,971.75 + $3,239.94 = **$83,211.69**.